**United States District Court**

For the Northern District of California

1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    FRIENDS OF THE EARTH, INC., et al.,

10            Plaintiffs,                          No. C 02-04106 JSW

11    v.                                           **NOTICE OF QUESTIONS FOR**
                                                   **HEARING**
12    ROBERT MOSBACHER, JR., et al.,

13            Defendants.

14    _____/

15          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE

16    NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON

17    APRIL 14, 2006, AT 9:00 A.M.:

18          The Court has reviewed the parties' memoranda of points and authorities and, thus, does

19    not wish to hear the parties reargue matters addressed in those pleadings.  If the parties intend to

20    rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing

21    counsel of these authorities reasonably in advance of the hearing and to make copies available at

22    the hearing.  If the parties submit such additional authorities, they are ORDERED to submit the

23    citations to the authorities only, without argument or additional briefing.  *Cf.* N.D. Civil Local

24    Rule 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance

25    on such authority.

26          **Plaintiffs' Motion to Strike.**

27    1.     In Section IV.A.1 and IV.A.2 of its Cross-Motion, OPIC essentially repeats

28           verbatim the arguments raised in Section VII.B.1 and VII.B.2 of its initial motion
             for summary judgment.  (*Compare* OPIC 11/3/04 Motion for Summary Judgment
             ("Nov. 04 MSJ") at 33:4-35:2 *with* OPIC's Cross-Motion and Opposition

**United States District Court**

**For the Northern District of California**

("OPIC Cross Motion") at 5:16-7:7; Nov. 04 MSJ at 35:7-21 *with* OPIC Cross Motion 8:17-9:9; Nov. 04 MJS at 35:22-37:8 *with* OPIC Cross Motion at 7:9-8:16). In its August 23, 2005 Order, the Court determined that the plain language of the Foreign Assistance Act did not support OPIC's position that it is not subject to NEPA.

    a.    What is before the Court now that was not before the Court then that would support OPIC's contention the plain language of the act demonstrates it is not subject to NEPA?

2.    In opposition to the motion to strike, Defendants contend that "Plaintiffs have never clearly defined what agency action they are challenging ..." and that "[a]s a result, the materials that Defendants produced to Plaintiffs at the outset of this case do not reflect the complete administrative record for any particular agency decision." (Opp. at 2 n.3.)

    a.    How do Defendants reconcile this statement with statements made with regard to the motion to transfer that the entire administrative record was located in Washington D.C.?

    b.    If Defendants contend there is no conflict between these two positions, how do Defendants justify not having produced the entire administrative record to Plaintiffs?

3.    a.    Are Plaintiffs proceeding under 5 U.S.C. § 706(1)?

    b.    To the extent Plaintiffs are proceeding under 5 U.S.C. § 706(2), Plaintiffs shall be prepared to reiterate the specific actions that they are challenging and to set forth the specific relief sought as to each such agency action. For example, are Plaintiffs contending that the projects in question are the "actions," or is it their contention that the actions are the decision to fund those projects?

    c.    Plaintiffs contend that Defendants "have violated" NEPA. If Plaintiffs are not limiting challenges to alleged past violations of NEPA to the projects specifically identified in the SAC, how could the Defendants have prepared an administrative record including unspecified projects?

**United States District Court**

For the Northern District of California

d.      To the extent Plaintiffs are proceeding solely under 5 U.S.C. § 706(2), the Court would normally be limited to considering the administrative record as it existed at the time of the decision relating to the final agency action in question.  However, the Ninth Circuit has enumerated certain exceptions to this general rule.  *See Southwest Center for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  Do Defendants concede that the second and third exceptions enumerated in *Southwest Center* would not be applicable to this case?

4.      Plaintiffs object to the supplemental declarations of James Mahoney and Harvey Himburg on the ground that they were not produced by December 16, 2005, pursuant to this Court's Order requiring Defendants to "product all documents on which they intend to rely on all issues relating to the cross-motions for summary judgment on the merits."  However, the Court intended that Order to apply to documentary - rather than testimonial - evidence.  Plaintiffs could have sought a Rule 56(f) continuance, if they believed it necessary to refute Defendants' allegations, but have not done so.  What is Plaintiffs' best argument that the Court should not consider these declarations in evaluating the motions?

**Cross-Motions for Summary Judgment**

1.      a.      What is Plaintiffs' response to Defendants' assertion that they are attempting to add new claims by referencing direct loans, which the Court notes in fact were not referenced in the first round of summary judgment briefing?

        b.      What is Plaintiffs' response to OPIC's assertion that it is prohibited from providing loans "to finance any operation for the extraction of oil or gas," and, thus, direct loans should not be at issue?

2.      a.      Plaintiffs assert that causation on the merits of their NEPA claim is judged under the causation same standard the Court used to determine standing.  In *Presidio Golf Club v. National Park Serv.*, 155 F.3d 1153 (9th Cir. 1998) the Ninth Circuit seems to distinguish these two inquiries.  *Id.* at 1163 (quoting *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 774 (1983)) (stating that "NEPA requires 'a

reasonably close causal relationship between a change in the physical environment and the effect at issue,'" and although the court found "an adequate string of causation necessary to confer standing, it does not necessarily follow that such a highly attenuated chain of causation as the Club alleges would lead to injuries cognizable under NEPA"). How would Plaintiffs distinguish *Presidio Golf*?

b.  Notwithstanding its holding in *Presidio Golf,* the Ninth Circuit has also stated that in order to prevail on a claim that an agency violated a duty to prepare an EIS, "a plaintiff need not show that significant effects will in fact occur," which would seem to support Plaintiffs' position with respect to causation. *Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1150 (9th Cir. 1988). In *Sierra Club v. United States Fish and Wildlife Service*, 235 F. Supp. 2d 1109 (D. Ore. 2002), relying on *Idaho Sporting*, the court stated that it would be "enough for the plaintiff to raise substantial questions whether a project may have a significant effect on the environment." *Sierra Club*, 235 F. Supp. 2d at 1129.

   i.  How would Defendants distinguish these cases with respect to the "causation" requirement?

   ii.  What is Defendants' best argument that Plaintiffs have not "raised substantial questions" about whether their projects have significant effects on the environment?

3.  a.  Is it Defendants' position that the specific projects identified in Plaintiffs' SAC do not constitute "major federal actions" as that term is used in Executive Order 12114 and their own environmental procedures?

   b.  If that is not Defendants position, why would the actions not qualify as "major federal actions" under NEPA, *i.e.* what support do Defendants have that the terms do not share the same meaning? *See, e.g.,* 40 C.F.R. § 1508.1 ("The terminology of this part shall be uniform throughout the Federal Government").

   c.  Plaintiffs assert Defendants should not be able to rely on the argument that the projects or alleged programs in question do not constitute "major

federal actions," because that is a *post hoc* rationale.  Can the Defendants point the Court to any evidence in the Administrative Record in which Defendants contended that the actions in question were not "major federal actions?"

d.      Assuming the Court determines the "major federal action" argument is not a new rationale, what is Plaintiffs' best argument that the Court should not determine whether the actions in question resolve the issue as a matter of law?

e.      If the "action" in question is the decision to provide a loan guarantee or financing for a particular project, do Defendants concede that they can control whether they will approve or disapprove funding and/or condition such funding on taking certain environmental measures?  Why do those facts not satisfy the requisite level of control necessary to render the projects major federal actions?

f.      Do Plaintiffs concede that the persons responsible for the daily operations of the various projects are, in general, not U.S. federal actors?

       i.      If so, do Plaintiffs have any authority to suggest that the Court should look solely to Defendants' ability to control the authorization of financing for these projects in its NEPA analysis?

      ii.      Why should the Court not consider the Defendants' ability, or lack thereof, to control the manner in which the various projects will be constructed and/or operated (especially with respect to environmental issues) in determining whether NEPA applies? *See, e.g., Goos v. Interstate Commerce Comm'n*, 911 F.2d 1283, 1296 (8th Cir. 1990) ("NEPA seeks only to regulate federal action and not private action ... .").

4.      What evidence exists in the record to demonstrate that Defendants "power portfolio" involves sufficiently concerted actions to qualify as a "program" for NEPA purposes?

5

United States District Court

For the Northern District of California

a. Do Plaintiffs have any authority supporting a conclusion that, on facts analogous to this case, Defendants actions would meet the standards contemplated in 40 C.F.R. § 1508.18(b)(3) to qualify as a program?

5. In *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004), the Ninth Circuit noted that although a decision not to prepare an EIS is normally judged under the arbitrary and capricious standard, "where an agency has decided that a project does not require an EIS without first conducting an EA, we review under the reasonableness standard." *Id.* at 640 (citing, *inter alia*, *Ka Makani 'O Kohala Ohana, Inc. v. Dept. of Water Supply*, 295 F.3d 955, 959 n.3 (9th Cir. 2002).) Although Plaintiffs equated the Defendants climate change reports to FONSI's in the first round of summary judgment briefing, the Court understands Plaintiffs' primary argument to be that Defendants have not complied with NEPA's requirements at all.

a. What standard of review do Plaintiffs urge the Court to apply to their APA claim?

6. a. With regard to the extraterritoriality argument (assuming the Court determines it is appropriate to address this issue), would Defendants concede that if Plaintiffs are asking only that Defendants undertake EA's or EIS's as to the impacts of greenhouse gas emissions on the environment in the United States, the presumption against extraterritorial application of law would not be an issue? Or, are Defendants arguing that the presumption would still apply because of the potential impact a NEPA analysis could have on the provision of funds to projects overseas?

b. What is Plaintiffs' best argument that the extraterritorial argument is not pertinent to the merits of their claims against Defendants?

c.    Plaintiffs argue that the proximity of the projects Defendants finance to the United States should not matter.  Would Plaintiffs agree that proximity to the United States may be pertinent to determining  whether a particular project has substantial effects within the United States?

Dated: April 13, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

7